IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND

*Southern Division*

JESSICA MARLENE MELGAR
MORATAYA,

    Plaintiff,

v.      Case No.: GJH-13-01888

NANCY'S KITCHEN OF SILVER
SPRING, INC., *et al*,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff, Jessica Marlene Melgar Morataya, filed this lawsuit against Defendants Nancy's Kitchen of Silver Spring, Inc. ("Nancy's Kitchen"), Roy G. Barreto ("Mr. Barreto"), and Vanda L. Barreto ("Mrs. Barreto") (collectively "Defendants") for purported violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code, Lab. & Empl. Article ("LE") § 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code, LE § 3-501 *et seq.* Defendants have moved for partial summary judgment, seeking to dismiss Mrs. Barreto from this lawsuit. Plaintiff has also moved for partial summary judgment, requesting the Court find as a matter of law (1) that Nancy's Kitchen is an enterprise engaged in commerce, (2) that Defendants are not entitled to a tip credit to offset against their minimum wage and overtime obligations, and (3) that Mr. Barreto is an employer under the relevant wage statutes.

This Memorandum Opinion and the accompanying Order address Defendants' Motion for Partial Summary Judgment and Plaintiff's Cross Motion for Partial Summary Judgment. ECF Nos. 37 & 39. A hearing is not necessary. *See* Loc. R. 105.6. For the reasons set forth in this Memorandum Opinion, Defendants' Motion for Partial Summary Judgment is GRANTED and Plaintiff's Cross Motion for Partial Summary Judgment is GRANTED.

**I. BACKGROUND**

In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the non-movant, drawing all justifiable inferences in that party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Unless otherwise stated, this background is composed of undisputed facts.

Nancy's Kitchen is a restaurant located at 3808 International Drive, Silver Spring, Maryland. ECF No. 39-2. In addition to food, Nancy's Kitchen serves beer and wine—including, Heineken, Budweiser, Miller Light, Corona, and wine from California—that is purchased from the Montgomery County Liquor Board. ECF No. 39-7 at 11–12. In 2012 and 2013, Nancy's Kitchen's gross sales exceeded $500,000.00. ECF No. 39-6.

Plaintiff began working as a server for Nancy's Kitchen in 2010 or 2011. ECF No. 39-7 at 40; ECF No. 39-11 at ¶ 3. Mr. Barreto is the sole owner and manager of Nancy's Kitchen. ECF No. 39-5 at 3. Mr. Barreto has the ability to hire and fire employees. ECF No. 39-7 at 6-8. He sets employee wages, "keeps the time records, does payroll, observes the hours worked by the employees[,] and keeps pay records." ECF No. 39-5 at 2. According to Plaintiff, Mr. Barreto hired her, set her pay rate, set her hours, promoted her, and supervised her. ECF No. 39-11 at ¶ 7. Plaintiff also testified that John Fernandes, who runs the restaurant in Mr. Barreto's absence, and

Mr. Barreto were the only individuals who provided Plaintiff with instruction regarding the performance of her duties. ECF No. 41-4 at 31. She said that she typically did not have direct contact with Mrs. Barreto. *Id.* at 126.

According to Mrs. Barreto, Nancy's Kitchen employs her as an administrative assistant and she does not have an ownership interest in the business. ECF No. 39-9 at 8 & 11. Mrs. Barreto receives a salary of $1,615.38 bi-weekly. *Id.* at 8. As an administrative assistant, among other duties, she sends emails, faxes menus, files invoices, makes copies, and purchases stationary. *Id.* at 14–15. In addition to those traditional administrative tasks, she also runs errands, decorates and cleans up for catering jobs, delivers food, and purchases beer and wine. *Id.* at 11–13. According to Mrs. Barreto, she is not responsible for payroll, *id.* at 15, however, Plaintiff testified that Mrs. Barreto would sometimes visit Nancy's Kitchen to count the money in the register and the tip bag. ECF No. 41-4 at 126. Plaintiff further notes that Mrs. Barreto would pay her by handing her an envelope with Mrs. Barreto's notes on the outside of the envelope explaining how the payment was calculated. ECF No. 39-11 at ¶¶ 10–12. Plaintiff was paid by both cash and check. ECF No. 41-4 at 21. Mrs. Barreto does not dispute the allegation that she handed Plaintiff her wages, but adds that she did this only when Mr. Barreto was not available. ECF No. 39-9 at 15 & 21–22. Even then, Mrs. Barreto testified, she prepared and delivered the paychecks and cash by retrieving the cash from her husband on a dresser in the couple's bedroom, placing the cash in an envelope for employees, and writing the amount that was to be given to the employee on the envelope based entirely on Mr. Barreto's calculations. *Id.* at 21–24. Plaintiff provides contradictory evidence on this point, stating that when she complained to Mr. Barreto about her pay, he would respond by stating that it was Mrs. Barreto who "did the calculations." ECF No. 39-11 at ¶ 11. However, Plaintiff acknowledges that Mr.

Barreto signed her paychecks, ECF No. 41-4 at 32, although there is evidence that Mrs. Barreto did occasionally sign checks from Nancy's Kitchen's bank account. ECF No. 39-13.

On June 27, 2013, Plaintiff filed a complaint against Defendants for violations of the minimum wage and overtime provisions of the FLSA, violations of the minimum wage provisions of the MWHL, and violations of the MWPCL. ECF No. 1. Plaintiff amended her complaint on July 1, 2013. ECF No. 4. Plaintiff claims that Defendants paid her the same hourly wage regardless of the number of hours she worked, including any hours over 40 per week that should have been paid as overtime wages. *Id.* at ¶ 16. Plaintiff also claims that Defendants did not permit her to keep all of the tips she received from customers. *Id.* at ¶ 17. From March 2011 to August 2012, Plaintiff alleges that Defendants paid her $4.00 per hour and no more than $45.00 from tips per day, amounting to $270 per week for tips. *Id.* at ¶¶ 13 & 17. From August 2012 to June 2013, Plaintiff alleges that Defendants continued to pay her an hourly wage of $4.00 and no more than $50.00 a day from tips, amounting to $300 per week for tips. *Id.* at ¶¶ 14 & 17. Plaintiff further alleges that after June 2013, Defendants paid her $4.15 per hour and disbursed $50.00 per day from the tips she earned during the week and $65.00 per day from tips she earned on the weekends, amounting to $330 per week in tips. *Id.* at ¶¶ 15 & 17.

**II.  STANDARD OF REVIEW**

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007); *see also* Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of demonstrating that no genuine dispute exists with regard to material facts. *Pulliam*

*Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). Notably, the moving party can demonstrate that there is no genuine issue of material fact by establishing that "there is an absence of evidence in support of the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the party seeking summary judgment demonstrates that there is no admissible evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 535 (D. Md. 2007). To satisfy this burden, the nonmoving party must produce competent evidence on each element of his claim. *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original). The evidentiary materials presented must show facts from which the fact finder could reasonably find for the party opposing summary judgment. *Id.* at 250–51.

### III. DISCUSSION

#### a. Defendants' Motion for Partial Summary Judgment

Defendants request that the Court find that Mrs. Barreto was not Plaintiff's employer during the relevant time period, and therefore, is not individually liable and should be dismissed from the amended complaint. ECF No. 37-1. The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Because the MWHL is the state equivalent of the FLSA, it provides a similar definition of "employer." *See* Md. Code, LE § 3–401. Employer is a broad definition and may include more than one employer. 29 C.F.R. § 791.2 (". . . [I]f the facts establish that the employee is employed jointly by two or more employers . . . all of the employee's work for all

of the joint employers during the workweek is considered as one employment for purposes of the [FLSA]."); *Falk v. Brennan*, 414 U.S. 190, 195 (1973); *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006).

Courts determine an employment relationship by the economic realities of the circumstance rather than technical concepts. *See United States v. Silk*, 331 U.S. 704, 713 (1947); *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961); *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). In examining the "economic realities," courts in this district have largely considered the following four factors, which were laid out in *Bonnette*, 704 F.2d at 1470: (1) authority to hire and fire employees; (2) authority to supervise and control work schedules or employment conditions; (3) authority to determine the rate and method of payment; and (4) maintenance of employment records. *See Roman v. Guapos III, Inc.*, 970 F.Supp. 2d 407, 413 (D. Md. 2013) (*citing* collection of cases). This list is not exclusive and no single factor is dispositive.[1] *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *Khalil v. Subway at Arundel Mills Office Park, Inc.*, 2011 WL 231793 at *2 (D. Md. Jan. 24, 2011).

The question of whether the spouse of a business owner should be considered an employer for purposes of the FLSA turns on the nature of the spouse's involvement in the business. In *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324 (5th Cir. 1993), the Fifth Circuit affirmed a district court's finding that a business owner's husband was an employer for purposes of the FLSA. There, the husband did not have an ownership interest in the business, however, he hired some of the employees, gave them instruction, removed money from the safe, signed payroll

---

[1] Because the MWHL is the state analogue to the FLSA, this same "economic realities" test is used to determine the applicability of the state statute. *See Iraheta v. Lam Yuen, LLC*, No. 12-1426, 2012 WL 5995689, at *4 (D. Md. Nov. 29, 2012).

checks, and spoke for the business when it was investigated for FLSA violations. *Id.* at 329. *See also Yu G. Ke v. Saigon Grill, Inc.*, 595 F.Supp. 2d 240, 264–65 (S.D.N.Y. 2008) (finding wife to be employer where she hired employees, assigned work hours, posted the employee schedule, told employees their wage rate, imposed fines on an employee whose work was unsatisfactory, and fired employees); *Solis v. Best Miracle Corp.*, 709 F.Supp. 2d 843, 849–50 (C.D. Cal. 2010) (finding business owner's husband an employer where he hired and fired employees, set employee work schedules, asked employees to sign fraudulent time cards, filled out time and wage sheets, signed paychecks, and paid all bills).

By contrast, there have also been a number of cases where courts have found that a spouse was not an employer for FLSA purposes. For example, in *Marroquin v. Canales*, 505 F.Supp. 2d 283, 298–99 (D. Md. 2007), the court granted summary judgment in favor of a business owner's wife, finding she was not an employer. There, plaintiffs claimed that the business observed no corporate formalities, co-mingled business and family funds, and the owner's wife regularly wrote paychecks to employees and wired money from the business account to her husband when he was out of town. *Id.* The court determined that these facts did not make the wife an employer. Instead, even acknowledging the expansive meaning of the term employer, the court determined that the wife did not hire employees, did not decide wages, and did not direct employees. *Id.* at 299. Given these facts, the Court determined that the spouse was not an employer as a matter of law. *Id.*; *see also Messmer v. Colors In Bloom, Inc.*, 67 Fed. Appx. 719, 721–22 (3rd Cir. 2003) (affirming finding that husband of business president was not an employer under the FLSA where husband visited business to collect receipts and assist his wife with operations while she was ill, but he did not own stock in business, did not work at business, and did not hold position as an officer or director).

Here, Defendants argue that Mrs. Barreto is entitled to judgment as a matter of law because an employer-employee relationship did not exist between Mrs. Barreto and Plaintiff. The Court agrees. During the time of Plaintiff's employment, Mrs. Barreto was not an owner, officer, or director of Nancy's Kitchen. *See* ECF No. 39-9 at 8 & 11. Mrs. Barreto was employed as an administrative assistant for Nancy's Kitchen, and her duties did not involve hiring or firing employees, scheduling or supervising employees, preparing payroll or keeping records. *Id.*; ECF No. 37-1 at 3. Unlike in *Reich*, 998 F.2d 324, *Yu G. Ke*, 595 F.Supp. 2d 240, and *Solis*, 709 F.Supp. 2d 843, where an employment relationship was found when a business owner's spouse had some control over the business and the employees, here the evidence shows that Mrs. Barreto did not have any control over the employees, including Plaintiff, or the day-to-day operations of Nancy's Kitchen. In fact, according to Plaintiff, it was Mr. Barreto who hired her, set her pay rate, set her hours, promoted her, and supervised her. ECF No. 39-11 at ¶ 7. Plaintiff testified that Mr. Fernandes and Mr. Barreto were the only two people who provided her with job-related instruction. ECF No. 41-4 at 31.

Plaintiff clings primarily to Mrs. Barreto's involvement with Plaintiff's wages, conceding, therefore, that the first two factors laid out in *Bonnette*, involving the hiring and firing and supervision of employees, are not present. *See* ECF No. 39-1 at 24–26. Plaintiff specifically references Mrs. Barreto's written calculations on the outside of Plaintiff's pay envelope, Mrs. Barreto handing Plaintiff her paycheck, money related to Nancy's Kitchen being kept on the Barretos' shared dresser, and Mrs. Barreto signing checks. *Id.* Without more, however, these actions do not establish a material dispute over the existence of an employer-employee relationship. Instead, Mrs. Barreto's involvement in her husband's business is similar to the facts in *Messmer*, 67 Fed. Appx. 719, where the business owner's husband visited the business to

collect receipts and assist with operations, and the court found that there was not an employer-employee relationship. Mrs. Barreto's activities are also similar to those in *Marroquin*, 505 F.Supp. 2d 283, where the court found the business owner's wife was not an employer as a matter of law even though the company comingled personal and business funds, the business owner's wife regularly wrote paychecks to employees, and the wife wired money from the business account to her husband when he was out of town. Here, Mrs. Barreto assists her husband with the business, is involved with writing and distributing paychecks, but otherwise has minimal involvement with employees.

In sum, while Plaintiff's testimony creates a disputed fact over whether Mrs. Barreto calculated her wages, that dispute alone is not sufficient to create a material dispute over whether Mrs. Barreto is Plaintiff's employer. There is no evidence that Mrs. Barreto had the authority to hire and fire employees, had the authority to supervise or control work schedules or employment conditions, had the authority to determine employee wage rates or methods of payment, or maintained the employment records. In the context of all four *Bonnette* factors, the Court finds that as a matter of law, Mrs. Barreto was not Plaintiff's employer. Defendants' motion for partial summary judgment as to Vanda Barreto's individual liability is GRANTED.

### b. Plaintiff's Cross Motion for Partial Summary Judgment

The second motion before the Court is Plaintiff's cross motion for partial summary judgment, where Plaintiff requests that the Court find in her favor on a number of issues. Specifically, Plaintiff asks the court to determine that (1) Nancy's Kitchen is an "enterprise engaged in commerce" within the meaning of the FLSA; (2) Defendants are not entitled to claim any tip credit as an offset against their minimum wage and overtime obligations under the FLSA;

and (3) Roy Barreto is an employer under the FLSA, MWHL, and the MWPCL. ECF No. 39-1 at 2.

### 1. Enterprise Engaged in Commerce

A plaintiff wishing to invoke the protections offered by the FLSA must satisfy the requirements for either individual or enterprise coverage. Enterprise coverage exists where the enterprise as a whole is "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). Under the FLSA, an enterprise is engaged in commerce when it:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A). Under this provision, "[l]ocal business activities are subject to the [FLSA] when the enterprise employs workers who handle goods or materials that have moved in interstate commerce." *Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 693 (4th Cir. 1990). "[I]t is well established that local business activities fall within the FLSA when an enterprise employs workers who handle goods or materials that have moved or have been produced in interstate commerce." *Brock v. Hamad*, 867 F.2d 804, 808 (4th Cir. 1989). It would be rare that a defendant would satisfy the volume of sales requirement of 29 U.S.C. § 203(s)(1)(A)(ii) but not satisfy the interstate commerce requirement of § 203(s)(1)(A)(i). *Diaz v. HBT, Inc.*, 2012 WL 294749 at *4 (D. Md. Jan. 31, 2012); *Diaz v. Jaguar Rest. Group*, 649 F.Supp. 2d 1343, 1347, 1349 (S.D. Fla. 2009) ("And while it is true, as Defendants contend, that fulfillment of the statutory business volume requirement is not itself sufficient to create enterprise coverage most, if not every, Circuit Court that has spoken on the issue construed the

1974 FLSA amendments as expanding enterprise coverage to virtually all employers, so long as that employer satisfies the $500,000 gross sales requirement.") (internal citation and quotation marks omitted). "It is difficult to imagine a defendant employer in the twenty-first century that does not have employees who handle, sell, or otherwise work on goods or materials that have moved in or have been produced for commerce by any person." *HBT, Inc.*, 2012 WL 294749 at *4.

Plaintiff contends that it should be conclusively established that Nancy's Kitchen was an enterprise engaged in commerce in 2012 and 2013 because its gross sales exceeded $500,000.00 and it served alcoholic beverages. ECF No. 39-1 at 14. Defendants do not deny these two facts. ECF No. 39-6 at No. 2 (admitting that gross volume of sales for 2012 and 2013 was in excess of $500,000.00); ECF No. 39-7 at 11–12 (admitting the sale of alcoholic beverages). However, Defendants assert that there are no facts showing that the alcoholic beverages served at Nancy's Kitchen ever moved through interstate commerce because Mr. Barreto purchased them from the Montgomery County liquor authority. ECF No. 41-1 at 6. Yet, Mr. Barreto testified that Nancy's Kitchen bought and sold Heineken, Budweiser, Miller Light, Corona, and wine from California. ECF No. 39-7 at 12. Thus, Mr. Barreto acknowledged that he purchased wine that was produced in California (and it is inconceivable that all of the beer purchased was produced and distributed in Maryland). *See* ECF No. 39-7 at 12. As the FLSA only requires that the goods have moved or have been produced in interstate commerce, the Court finds that as a matter of law Nancy's Kitchen is an enterprise engaged in commerce under the FLSA. *Cf. Diaz*, 649 F.Supp. 2d at 1353 (". . . even if the business purchased those materials locally from Florida restaurant or food product distributors, they have 'in the past' traveled in interstate commerce."). Accordingly,

Plaintiff's motion for partial summary judgment with respect to Nancy's Kitchen classification as an enterprise engaged in commerce is GRANTED.

### 2. Tip Credit

The FLSA requires employers to pay "nonexempt employees" a $7.25 minimum wage for each hour worked. 29 U.S.C. § 206(a). However, the FLSA provides an exception, commonly referred to as a tip credit, which allows employers to pay less than the minimum wage to employees who receive tips.[2] 29 U.S.C. § 203(m). Under this provision, an employer may pay a tipped employee less than $7.25 (but at least $2.13) an hour if the combination of the employee's wages and tips equates to at least $7.25 per hour. *Gionfriddo v. Jason Zink, LLC*, 769 F.Supp.2d 880, 893 (D.Md. 2011). To take advantage of the tip credit, the employer must "(1) inform the employee that the tip credit was being claimed; and (2) allow the employee to retain all tips he or she received. . . ." *Dorsey v. TGT Consulting, LLC*, 888 F.Supp. 2d 670, 681 (D. Md. 2012) (citing *Arencibia v. 2401 Rest. Corp.*, 831 F.Supp. 2d 164, 175 (D.D.C. 2011). "Employees are permitted to share tips through a tip pooling or tip splitting arrangement so long as each employee customarily receives more than $30 per month in tips." *Gionfriddo*, 769 F.Supp.2d at 893; *see also* 29 C.F.R. § 531.54. If the employees practice tip pooling, the employer may not participate as employer participation makes the employer ineligible for the tip credit under the FLSA.[3] *Gionfriddo*, 769 F.Supp. 2d at 893–94 (citing *Chung v. New Silver Palace Restaurant, Inc.*, 246 F.Supp.2d 220, 230 (S.D.N.Y. 2002); *Morgan v. SpeakEasy, LLC*,

---

[2] Tipped employees are those who customarily and regularly receive more than $30 a month in tips. 29 U.S.C. § 203(t).

[3] The MWHL contains a tip credit provision similar to the one contained in the FLSA. *See* Md. Code, LE§ 3-419. *See Gionfriddo*, 769 F. Supp. at 895 ("In light of the congruent nature of the FLSA and the MWHL . . . this Court must conclude that the MWHL was also violated as a result of Mr. Zink's participation in the employee tip pool.").

12

625 F.Supp.2d 632, 652 (N.D. Ill. 2007); *Ayres v. 127 Restaurant Corp.*, 12 F.Supp.2d 305, 308–09 (S.D.N.Y. 1998); *Davis v. B & S, Inc.*, 38 F.Supp.2d 707, 714 (N.D. Ind. 1998).

Plaintiff seeks partial summary judgment prohibiting the Defendants from claiming a tip credit under the FLSA. ECF No. 39-1 at 18–19. Defendants acknowledge that the tips received at Nancy's Kitchen went into the general operating account and were used to pay general expenses. ECF No. 41-1 at 4. Defendants, therefore, concede that they are not eligible to receive a tip credit. As a result, this Court GRANTS Plaintiff's partial motion for summary judgment and finds that Defendants are not entitled to claim any tip credit as an offset against their minimum wage and overtime obligations under the FLSA.

### 3. Roy Barreto's Employer Status

Plaintiff moves for partial summary judgment on Mr. Barreto's status as an employer. ECF No. 39-1 at 22–23 & 28. Defendants do not present any argument against this motion. In fact, Defendants have emphatically argued that Mr. Barreto was Plaintiff's employer. *See* ECF No. 37-1 at 4 ("It was apparent from the testimony . . . that Mr. Barreto trusted only himself to supervise, pay employees, collect revenues and totally control the calculation and manner of distribution of said revenues. Only Roy Barreto and no one else was involved in this aspect of the operations of Nancy's Kitchen."). Because there is no dispute as to the facts surrounding Mr. Barreto's status as an employer, the Court GRANTS Plaintiff partial summary judgment and finds that Roy Barreto employed Plaintiff during the relevant time period.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Partial Motion for Summary Judgment is GRANTED, and Plaintiff's Cross Motion for Partial Summary Judgment is GRANTED.

A separate Order shall issue.

Dated: January 12, 2015

GEORGE J. HAZEL
UNITED STATES DISTRICT JUDGE