### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT COURT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
|  | * |  |
| **JESSICA MARLENE MELGAR MORATAYA,** | * |  |
| **Plaintiff,** | * |  |
| **v.** |  | **Case No.: GJH-13-01888** |
|  | * |  |
| **NANCY'S KITCHEN OF SILVER SPRING, INC., *et al,*** | * |  |
| **Defendants.** | * |  |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

### MEMORANDUM OPINION

This is a wage violation case brought by Plaintiff Jessica Marlene Melgar Morataya against her former employer, Defendant Nancy's Kitchen of Silver Spring, Inc. ("Nancy's Kitchen") and its owner, Roy Barreto, for purported violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code, Lab. & Empl. Article ("LE") § 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code, LE § 3-501 *et seq.* Pending before the Court is Plaintiff's Second Motion for Partial Summary Judgment. *See* ECF No. 52. In ruling on Plaintiff's previous motion, the Court found that Defendants were not entitled to a tip credit under the FLSA, specifically 29 U.S.C. § 203(m), to offset against their minimum wage and overtime obligations. *See* ECF No. 44.

Plaintiff's Second Motion for Partial Summary Judgment seeks to further sharpen the issue. Plaintiff now asks the Court to find that Defendants' weekly cash payments to Plaintiff not only fail to qualify as a tip credit, but also cannot otherwise satisfy Defendants' FLSA

obligations.[1] *See* ECF No. 52 at 1. Defendants, on the other hand, assert that the weekly cash payments they gave to Plaintiff should factor into Plaintiff's hourly wage calculations because they were not tips. *See* ECF No. 53 at 1. A hearing was held on June 16, 2015. *See* Loc. R. 105.6 (Md.). For the reasons outlined below, Plaintiff's Second Motion for Partial Summary Judgment is GRANTED, in part, and DENIED, in part.

## I.    BACKGROUND

Nancy's Kitchen is a restaurant located at 3808 International Drive, Silver Spring, Maryland. *See* ECF No. 39-2. Plaintiff alleges that she began working for Nancy's Kitchen around 2007. *See* ECF No. 39-11 at ¶ 2. She first worked as a busser, clearing tables, and began working as a server around 2010 or 2011. *See* ECF No. 53-3 at 22–26. Only two or three individuals worked as servers for Nancy's Kitchen during the relevant time period. *See* ECF No. 53-2 at 12.

In the course of discovery for this case, Plaintiff was deposed. She testified that, while she was a server, she was never permitted to keep the tips she received from customers. *See* ECF No. 41-4 at 6. Instead, she was required to take tips to Mr. Barreto, the owner of Nancy's Kitchen, or put them in a designated bag, which was called the "kitty." *See id.* Plaintiff testified that Mr. Barreto decided how the tips from the kitty were divided. *See id.* at 8.

Mr. Barreto was also deposed. In slight contrast to Plaintiff, he stated that Plaintiff was permitted to keep her tips if she worked alone because "that's her tip, she keeps it." *See* ECF No. 53-2 at 4. But if Plaintiff was not alone, she was required to put her tips in the kitty. *See* ECF No. 39-7 at 17 & 20. Mr. Barreto explained that everyone who worked together then received money in separate envelopes. *See* ECF No. 53-2 at 3. Specifically, he said, "[t]he people who are

---

[1] Plaintiff also requests that the Court determine the months Plaintiff worked and for which she should be compensated. *See* ECF No. 52 at 2.

working as a team, they get [an envelope], including the credit card, whatever is put in." *See id.*
This daily amount was paid weekly in cash. *See* ECF No. 53-3 at 22–26. Mr. Barreto indicated
that he gave tip money to Plaintiff, John Fernandes (another server), and possibly a busser. *See*
ECF No. 39-7 at 20. Mr. Barreto also said that tips paid by credit card all go "to the bank and
then I make the envelopes based on whatever money I collect." ECF No. 53-2 at 6.

When Mr. Barreto was again asked to clarify how he treated the tips put into the kitty,
Mr. Barreto said, "[t]hose are being given as tip credit." *See* ECF No. 42-1 at 15. This, according
to Mr. Barreto, is "[t]he time they work, plus the tip for the whole day, it gets shared." *Id.* He
also said he used the money from the kitty, in part, to purchase goods used at the restaurant. *See*
ECF No. 53-2 at 19. At another point in the deposition, he once again agreed that the tips from
the kitty were distributed to employees; he said he kept the money from the kitty to the side to
make the envelopes and gave employees the tip credit.[2] *See id.* at 12-16. When asked about the
amount of tips given to the employees, Mr. Barreto testified that he paid the employees a fixed
amount each day regardless of the amount of tips in the kitty. *See* ECF No. 53-2 at 7. Mr. Barreto
explained that "[i]t is just a fixed amount. They've been told, because I told her earlier, business

---

[2] In fact, Mr. Barreto talked about the money from the tip kitty often during his deposition and
was consistent that the money from the kitty was used, in part, to pay employees a "tip credit."
When asked what he did with the tips, Mr. Barreto said "[i]t is a kitty, so I make - - I give them
envelopes every week . . ." *See* ECF No. 39-7 at 20. Again, when asked if he gave the servers an
envelope with cash containing the tips, Mr. Barreto responded "[t]he tip credit, the money which
collects." *See* ECF No. 53-2 at 6. At another point, Mr. Barreto explained that the cash placed in
the kitty was not treated as revenue but placed to the side to pay the employees "tip credit." *See*
ECF No. 39-7 at 21-22. He also said that he collects all money for the day as revenue and then
makes the tip credit distribution. *See id.* at 21. In addition, in answering interrogatories,
Defendants stated that the tips were treated as revenue and, in lieu of tips, the servers were given
a set amount per day. *See* ECF No. 39-2. Despite the repeated reference to tips during discovery,
Mr. Barreto provided the Court with an affidavit attached to Defendants' opposition to Plaintiff's
first motion for partial summary judgment, where he explained that the daily pay rate did not
come from tips but from the restaurant's general operating account. *See* ECF No. 41-3.

can be slow or busy. There could be - - if it's slow, I take the bullet; if it's busy, it's okay, I mix it up, however I can make them happy to work there." *See id.* at 19.

According to Mr. Barreto, the daily payments equaled or exceeded the amount Plaintiff would have received if she had kept all of her tips. *See* ECF No. 53-2 at 21. According to Plaintiff, she expressed concern about whether she was receiving enough tip money and Mr. Barreto increased her wage to $65 a day on the weekends. *See* ECF No. 41-4 at 13.

Further explaining how Plaintiff was paid, Defendants have provided the Court with a spreadsheet purporting to show Plaintiff's hours and pay from December 2010 to July 2013. *See* ECF No. 53-3 at 22–26. The spreadsheet appears to have been created by the restaurant's accountant, Agnelo Gonsalves. *See* ECF No. 39-15 at 6. The spreadsheet also appears to have been created after the fact and not contemporaneously.[3] *See* ECF No. 39-15 at 6-7. In 2010, when Plaintiff was working as a busser, the spreadsheet indicates that she was paid $7.25 per hour. *See* ECF No. 53-2 at 22–26. In March 2011, when she became a server, Plaintiff began receiving $4.00 per hour. *See id.* In July 2013, her hourly wage was increased to $4.15 per hour. *See id.* The spreadsheet notes what portion of Plaintiff's hourly wage was paid in cash and what portion was paid by check. *See id.* The spreadsheet also contains a column entitled "other cash payments" and indicates that Plaintiff received between $540 and $660 in cash every two weeks. *See id.* The spreadsheet also shows the amount of tips Plaintiff reported for each pay period. *See id.*

Plaintiff's employment with Defendants ended on July 12, 2013. *See* ECF No. 53-2.

---

[3] Gonsalves stated that he used Plaintiff's W-2 documents, Plaintiff's verified complaint, and Mr. Barreto's statements regarding how payments were made to create the spreadsheets. *See* ECF No. 39-15 at 6-7.

## II.    STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007); *see also* Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of demonstrating that no genuine dispute exists with regard to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). Notably, the moving party can demonstrate that there is no genuine issue of material fact by establishing that "there is an absence of evidence in support of the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the party seeking summary judgment demonstrates that there is no admissible evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 535 (D. Md. 2007). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original). The evidentiary materials presented must show facts from which the fact finder could reasonably find for the party opposing summary judgment. *Id.* at 250–51.

## III.    DISCUSSION

Plaintiff alleges, in part, violation of the FLSA's minimum and overtime wage requirements. *See* ECF No. 4. In this second motion for partial summary judgment, Plaintiff argues that there is no genuine dispute over the wage Defendants paid Plaintiff and, as a result, Defendants violated the FLSA as a matter of law. *See* ECF No. 52-1. Defendants argue that there

is a genuine dispute over Plaintiff's wage, and relatedly, over whether Defendants violated the FLSA's minimum and overtime wage requirements. *See* ECF No. 53 at 1. Thus, the Court must look at three issues. First, whether the tip credit provision of the FLSA is applicable to this case; second, whether Defendants' payment arrangement with Plaintiff violated the tip credit provision, and, as a result, the FLSA's minimum wage requirement; and third, whether Plaintiff is owed the difference between the required minimum wage and the hourly wage she was paid.

### A.  The applicability of 29 U.S.C. § 203(m)

Under 29 U.S.C. § 206, an employer must pay its employees at least $7.25 an hour. However, an employer is permitted to receive a "tip credit" for a tipped employee, which is defined as any employee engaged in an occupation in which she customarily and regularly receives more than $30 a month in tips. *See* 29 U.S.C. § 203(t). Under § 203(m), a tipped employee may be paid as low as $2.13 per hour as long as the hourly cash wage and the tips the employee receives equate to at least the prevailing minimum wage. *See* 29 U.S.C. § 203(m). In essence, for FLSA purposes, the employer is given a credit for the difference between the minimum wage and the hourly wage it was paying if the employer complies with the provisions of § 203(m). Specifically, § 203(m) requires that the employee be informed of this provision and that the employee retain all tips received. *See* 29 U.S.C. § 203(m); *see also* 29 C.F.R. § 513.59. In this case, the Court has already ruled that Defendants are not entitled to receive a tip credit. *See* ECF No. 44. Defendants now assert that § 203(m) simply does not apply and that the cash payments, while not a tip credit, still count toward the calculation of Plaintiff's minimum wage. *See* ECF No. 53-1 at 2–4. According to Defendants, if the cash payments are included, they paid Plaintiff more than minimum wage. *See id.* at 4–5. They claim that Plaintiff's "direct wage" was divided into two parts—an hourly wage and a daily wage. *See id.* at 4. Defendants insist that the

daily wage was not meant to be a redistribution of tips but rather a second method of payment. *See id.*

Without assuming that Defendants' argument is consistent with the law, the evidence belies Defendants' argument on factual grounds. Indeed, Mr. Barreto never stated before Plaintiff's first motion for partial summary judgment that the daily wage paid to Plaintiff represented anything other than tips. Rather, Mr. Barreto's testimony indicates, repeatedly and in a variety of ways, that he collected employee tips and then redistributed some of those tips to the employees. *See infra* at 2–4.

Other evidence in the record contradicts Defendants' argument that the daily amount paid was not meant to be tip money. The spreadsheets submitted by Defendants show that Plaintiff was paid an hourly rate of $7.25 (minimum wage) when she was not a server and $4.00 per hour, which was later increased to $4.15, after she became a server. ECF No. 53-2 at 22–26. Thus, when Plaintiff became a "tipped employee," her hourly wage was decreased below minimum wage consistent with an employee who is being partially compensated by tips. Further, Plaintiff's testimony indicates that she believed that the "daily rate" she received was based on her tips. ECF No. 41-4 at 11–13. Conversely, there is not a scintilla of evidence in the record tending to support Defendants' argument that the daily amount paid to Plaintiff was for any other purpose. Indeed, Defendants fail to explain the number of hours that the daily wage was to compensate Plaintiff for working. Thus, Defendants have failed to produce evidence that would create a dispute of fact that this daily rate was anything other than a way to redistribute employee tips. Defendants cannot tip toe around the FLSA's requirements for tipped employees by creating

an after-the-fact elaborate pay system that includes both hourly and daily wages.[4] Whether this type of pay system would be permitted if actually used by an employer to pay minimum wage is a question for another day.

### B. Defendants' payment system

Understanding that Plaintiff was paid less than $7.25 per hour and was paid an additional flat sum as tips, 29 U.S.C. § 203(m) is applicable to this case. As discussed above, § 203(m) permits an employer to pay a tipped employee a lower hourly rate, but not less than $2.13 per hour, plus tips (the employers receive a tip credit for up to $5.12 per hour). *See* 29 U.S.C. § 203(m). This statutory provision comes with requirements. Under § 203(m), the employers must permit employees to retain all tips received by the employees, and the employees must be informed that their hourly wage is being decreased. *See* 29 U.S.C. § 203(m); *see also* 29 C.F.R. § 513.59. The two requirements of § 203(m) (knowledge and retaining all tips) must be satisfied "even if the employee received tips at least equivalent to the minimum wage." *Chung v. New Silver Palace Rest., Inc.*, 246 F.Supp. 2d 220, 229 (S.D.N.Y. 2002) (citing *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 404 (3d Cir.1994) (reversing district court's equitable reduction of employer's liability for full minimum wage where notice of intent to take tip credit was not given); *and*

---

[4] Defendants argue that Mr. Barreto did provide an affidavit attached to its opposition to Plaintiff's first motion for partial summary judgment indicating that the daily rate did not come from the tip kitty and he based the daily rate on duration, quality, and value of service, *See* ECF No. 53-1 at 3. However, these statements flatly contradict his deposition testimony that the tip money from the kitty was divided among the employees to provide them with a "tip credit" without any explanation for the contradiction. Thus, this complete contradiction of previous testimony cannot be used to create a dispute of fact in the face of a summary judgment motion. *See Zimmerman v. Novartis Pharm. Corp.*, 387 F.R.D. 357, 361 (D. Md. 2012) ( "Under the sham affidavit doctrine, 'a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.'") (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)).

*Martin v. Tango's Restaurant, Inc.,* 969 F.2d 1319, 1323 (1st Cir.1992) ("It may at first seem odd to award back pay against an employer . . . where the employee has actually received and retained base wages and tips that together amply satisfy the minimum wage requirements. Yet Congress has in section [20]3(m) expressly required notice as a condition of the tip credit and the courts have enforced that requirement.")).

Employers may allow their employees "to share tips through a tip pooling or tip splitting arrangement" and still meet the requirements of § 203(m), as long as the tip pool only includes tipped employees. *Gionfriddo v. Jason Zink, LLC,* 769 F.Supp.2d 880, 893 (D. Md. 2011); *see also* 29 C.F.R. § 531.54. In other words, if the employees decide to practice tip pooling, the *employees* must retain all the tips; the employer may not keep any of the tips.[5] *Gionfriddo,* 769 F.Supp. 2d at 893–94 (citing *Chung,* 246 F.Supp.2d at 230; *Morgan v. SpeakEasy, LLC,* 625 F.Supp.2d 632, 652 (N.D. Ill. 2007); *Ayres v. 127 Restaurant Corp.,* 12 F.Supp.2d 305, 308–09 (S.D.N.Y. 1998); *Davis v. B & S, Inc.,* 38 F.Supp.2d 707, 714 (N.D. Ind. 1998)).

Here, Defendants have essentially admitted that their tip sharing arrangement did not fit within the parameters of § 203(m). *See* ECF No. 41-1 at 4–5. Lest there be any doubt, other evidence solidifies the same conclusion. There is no evidence in the record that the employees of Nancy's Kitchen ever decided or agreed to participate in a tip pool. Further, there is no evidence that Defendants ever explained to the employees that their wage would be decreased under § 203(m). In addition, Mr. Barreto admitted that he did not simply redistribute the tips that were pooled, but used the tips to buy items for the restaurant and possibly to pay non-tipped employees. *See* ECF No. 39-7 at 20 & ECF No. 53-2 at 19. In fact, it is clear that Defendants did

---

[5] The MWHL contains a tip credit provision similar to the one contained in the FLSA. *See* Md. Code, LE§ 3-419. *See Gionfriddo,* 769 F. Supp. at 895 ("In light of the congruent nature of the FLSA and the MWHL . . . this Court must conclude that the MWHL was also violated as a result of Mr. Zink's participation in the employee tip pool.").

9

not simply redistribute the tips evenly because the amount the employees received per day was always the same regardless of how many tips were actually received. *See* ECF No. 53-2 at 21.

Other courts have found arrangements similar to the one in this case to be in violation of the FLSA. In *Sorensen v. CHT Corp.*, Nos. 03 C 1609, 03 C 7362, 2004 WL 442638 at * 1 (N.D. Ill. Mar. 10, 2004), the employer paid its employees $3.09 per hour plus a flat "per diem" rate. Under this arrangement, the servers were required to turn over their tips to their employer and the employer used the tips to pay a flat rate to the servers and the non-tipped employees (cooks and other food preparers). *See id.* The employer also used some of the tips to fund charitable activities. *See id.* There, the court said, albeit in dicta, that Plaintiffs' remedy lied in the FLSA and the Court was "not persuaded by Defendants' belief that the allegedly 'generous compensation package that amounted to roughly $70,000 on an annualized basis establishes that they were paid fairly for their work as a matter of law.'" *Id.* at * 7. *See also Donovan v. Tavern Talent and Placements, Inc.*, 84-F-401, 1986 WL 32746, at *4 (D. Colo. 1986) (finding that "an agreement whereby the employer would own the tips received and could use those tips to satisfy the minimum wage" was not valid under the Act); *Wright v. U-Let-Us Skycap Services, Inc.*, 648 F.Supp 1216, 1217 (D. Colo. 1986) (finding agreement where plaintiffs turned in all tips and defendant reimbursed them just up to the amount that would equal minimum wage was in blatant contravention of 29 U.S.C. § 203(m)). Here, Defendants collected Plaintiff's tips and reimbursed Plaintiff a set amount without regard to how many tips were actually collected by Plaintiff and her co-workers. *See* ECF No. 53-2 at 21. Thus, Defendants' payment system did not meet the requirements of § 203(m) and the weekly cash payments cannot be used to offset the minimum wage requirements.

### C. Plaintiff's remedy

As Defendants did not follow the requirements of § 203(m), Plaintiff argues that Defendants owe her the difference between the full minimum wage and the hourly wage she received. *See* ECF No. 52-1 at 1–2. Plaintiff is correct.

The Fourth Circuit has found that employers who violate § 203(m) are not permitted to count tips in determining the employee's damages. *Richard v. Marriott Corp.,* 549 F.2d 303, 306 (4th Cir. 1977). In *Richard,* the employer permitted employees to keep all their tips but did not pay them any hourly wage unless their tips failed to provide them with minimum wage. *Id.* at 304. The Fourth Circuit found that this violated the FLSA, because the employer failed to pay the employees an hourly wage of at least $2.13, and found damages were 100 percent of the applicable minimum wage. *Id.* at 306. The Fourth Circuit said:

> What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of [§ 20]3(m) and fully inform your employees of it, you may obtain a 50 percent credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit. It is nonsense to argue, as does [the employer], that compliance with the statute results in one-half credit, but that defiance of the statute results in 100 percent credit. We think the conclusion is compelled that the measure of damages for each of [the employer's] employees is payment of the applicable minimum wage in full.

*Id.* at 305; *see also Marshall v. Gerwill, Inc.,* 495 F.Supp. 744, 753 (D. Md. 1980) (finding employees were owed full minimum wage even though they had been permitted to keep their tips and also paid at least $2.13 an hour because the employer did not provide notice that the employer was paying them partly in tips as required by § 203(m)). Here, Defendants gave Plaintiff an hourly wage below minimum wage and then gave her a set amount of tips in a manner that did not comply with § 203(m). Thus, Defendants cannot count what they have

11

referred to as her daily wage as part of her minimum wage and, for the first forty hours she worked each week, she is owed the difference between $7.25 and her hourly rate of $4.00 or $4.15. For the hours she worked over forty each week, she is owed the difference between 1.5 times the minimum wage and her hourly rate. *See* 29 U.S.C. § 207.

### D. Dates Plaintiff worked

In addition to finding that she is owed minimum and overtime wages, Plaintiff asks this Court to identify what specific months she is to be compensated for. *See* ECF No. 52 at 2. The Court finds this request to be premature. The parties have not briefed or argued that Plaintiff's hours should be decided as a matter of law at this time. Additionally, the parties have not briefed or argued the applicable statute of limitations. *See* 61 Stat. 88, 29 U.S.C. § 255(a) (provides that FLSA actions must be commenced within two years "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued"). Without these pieces of the puzzle, the Court cannot decide what months Plaintiff should be compensated for.[6]

---

[6] The Court also notes that at the hearing, defense counsel suggested that if the Court resolved the § 203(m) issue, the defense would concede much of the remainder of Plaintiff's summary judgment motion. Thus, the Court leaves this to be handled through factual stipulation if trial remains necessary.

## IV.    CONCLUSION

For the reasons outlined above, Plaintiff's Second Motion for Partial Summary Judgment is GRANTED, in part, and DENIED, in part. 29 U.S.C. § 203(m) is applicable to this case, Defendants' payment system violated the FLSA's minimum wage requirements for tipped employees, and Defendants are responsible for paying Plaintiff minimum, and potentially overtime, wages. The amount Plaintiff is owed will depend on the number of hours worked and the applicable statute of limitations.

A separate Order follows.

Dated: July 17, 2015

GEORGE J. HAZEL
United States District Judge