IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND
*Southern Division*

| | |
|---|---|
| JESSICA MARLENE MELGAR MORATAYA, | * |
| Plaintiff, | * |
| v. | Case No.: GJH-13-01888 |
| NANCY'S KITCHEN OF SILVER SPRING, INC., et al., | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff, Jessica Marlene Melgar Morataya ("Plaintiff" or "Morataya"), filed this lawsuit against Defendants Nancy's Kitchen of Silver Spring, Inc. ("Nancy's Kitchen") and Roy G. Barreto (collectively, "Defendants") for purported violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code, Lab. & Empl. Article ("LE") § 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code, LE § 3-501 *et seq.*[1] A two-day bench trial was conducted on October 26 and 27, 2015. For the reasons that follow, the Court enters judgment in favor of the Plaintiff and awards damages in the amount of $66,571.18.

### I. BACKGROUND

Plaintiff initiated this action with the filing of a Complaint on June 27, 2013, ECF No. 1, and amended her Complaint on July 1, 2013, ECF No. 4. The Court has previously ruled on two motions for summary judgment, which narrowed the issues for trial. In its January 12, 2015

---

[1] Defendant's wife, Vanda L. Barreto, was also included as a defendant in the initial Complaint but was later dismissed from the action by the Court. ECF No. 44.

Memorandum Opinion, the Court ruled that: Defendant Vanda L. Barreto was not Plaintiff's employer and was thus dismissed from the case as a defendant; Nancy's Kitchen was properly classified as an enterprise engaged in commerce in 2012 and 2013 for purposes of the FLSA; Defendants were not entitled to a "tip credit" as an offset against their minimum wage and overtime obligations under the FLSA; and, Roy Barreto was Plaintiff's employer. ECF No. 44. The Court's July 7, 2015 Memorandum Opinion further narrowed the "tip credit" issue and found that Defendants' payment methods, including the weekly cash payments, violated the FLSA's minimum wage requirements for tipped employees and that Defendants are, therefore, responsible for paying Plaintiff minimum, and potentially, overtime wages. ECF No. 56. The following issues were left to be resolved at trial: (1) the number of hours worked by Plaintiff during the relevant periods and the amount of wages paid by Defendants for the hours worked during those periods; (2) whether Plaintiff is entitled to liquidated damages under 29 U.S.C. § 216(b); and, (3) whether Plaintiff is entitled to enhanced damages under Md. Code Ann., Empl. Art., § 3-507.1(b). The first issue is a fact-based determination and thus will be primarily addressed in the Court's Findings of Fact. The second and third issues require both fact-finding and conclusions of law and will be primarily addressed in the Court's Conclusions of Law.

**II.     FINDINGS OF FACT**

The Court heard testimony from both Plainitff Morataya and Defendant Barreto. Defendants called two additional witnesses: Angelo Gonsalves, who presented information in chart form that had been provided to him by Barreto; and John Fernandes, a waiter at Nancy's Kitchen, who at the time of trial, remained employed by Barreto. Although the respective testimonies of Gonsalves and Fernandes were helpful to the Court, the core issues are found in the disputes between the testimony of Morataya and Barreto.

Morataya testified that she began employment at Nancy's Kitchen on October 27, 2007 and worked there until July 7, 2013. She began as a busser before becoming a waitress on March 12, 2011. As a busser, she was paid $7.25 per hour. She testified that, as a busser, she worked between 58–64 hours per week, spread out over 6 or 7 days per week, but was only paid for 40 hours per week regardless of the hours she worked. When she became a waitress in March 2011, her hourly wage was changed to $4 per hour. Morataya was told by Barreto that she could keep her own tips when she was the only person working on the floor but, when she was not, the tips she received were to be placed in a bag so that they could be shared between her, Fernandes, and Barreto. She received pay envelopes once per week with cash, which constituted the weekly cash payment for tips received; and a paycheck in an envelope every other week, which included a mix of cash and checks for her hourly wages. The weekly cash payments for tips were paid at a flat rate of $45 per day regardless of the tips actually received.[2] That amount was raised to $50 per day on May 2, 2012. Her hours fluctuated during her employment there. From the time she became a waitress on March 12, 2011 until she began going to school on May 2, 2011, she worked approximately 63.25 hours per week. From the time she began school until the time she left her employment at Nancy's Kitchen on July 7, 2013, Morataya worked approximately 57 hours per week.

Barreto testified that he has operated Nancy's Kitchen since 1998. As the owner, he does scheduling, payroll, deliveries, waiting, cooking, washing, and "whatever it takes to get the place going." He testified that he hired Morataya in 2007 and began paying her wages primarily in

---

[2] Although Barreto (and his counsel) attempted to avoid the consequences of an earlier ruling of the Court by re-characterizing these weekly cash payments as something other than money stemming from the tips earned by Nancy Kitchen employees, the Court finds that these payments constitute the tips that were the subject of both ECF Nos. 44 and 56. Thus, having previously found that Defendants did not comply with the requirements under FLSA for receiving a "tip credit" against owed wages, the Court will not permit Defendants to use these payments as offsets against their minimum wage and overtime obligations.

cash, at her request, in 2009. In 2010, he began paying her partially by check. He denied that Morataya's job classification ever changed from busser to waitress or server. In response to questioning from Morataya's counsel, he claimed that he did not "understand what is a waitress and what is a server." He testified that everyone, including him, did the same job. He claimed that it was difficult to teach Morataya how to perform new tasks because her English was limited. Barreto testified that he paid her $7.25 per hour in 2010 and that she was paid $8 per hour from 2011–2013. He stated that references to $4 an hour on the pay envelopes entered into evidence referred to a "half-hourly" rate because Morataya wanted to be paid half in cash and half in check. Although, in a sworn affidavit, he previously referred to an "hourly wage" of $4 per hour and to the weekly cash payments as "tips," at trial, he testified that the weekly cash payments were part of her hourly wages leading to a total of $8 per hour. He acknowledges that he did not have records regarding Morataya's hours worked, other than for 2013, and claims that they were originally kept on thermal paper, which faded and were eventually discarded.

The Court does not credit Barreto's testimony. First, Barreto testified that he paid Morataya an hourly wage of $8 beginning in March 2011, which would be above minimum wage. Yet, no document, other than a chart prepared for the purposes of litigation, supported this assertion. To the contrary, however, the payment envelopes retained by Morataya, in which she received her wages, indicate clearly that she was being paid $4 or, at times, $4.15 per hour. The envelopes were filled out by Barreto's wife, who typically provided the payments to the employees. Specifically, a number of the envelopes stated the hours worked, followed by "@ 4.15" or "@ 4," followed by a number that reflected the hours worked multiplied by 4.15 or 4. Other envelopes reflect a number of hours being subtracted by a smaller number, which the parties agreed was the portion of the total hours being paid by check, followed by "@4" and then

a number equaling the number of hours not being paid by check multiplied by 4. The only other source of payment made by Nancy's Kitchen to Morataya was the weekly cash payments, which the Court has already found was payment for tips collected and not hourly wages. Thus, not only is Barreto's testimony regarding an $8 per hour payment not supported, it is directly refuted. The Court finds, therefore, that Barreto was untruthful on this point and merely attempted to reconstitute the weekly cash payment, which he had previously stated was payment for tips, as a part of her hourly wage, as a result of the Court's prior ruling that those weekly cash payments would not be allowed as an offset against wages owed because of his failure to comply with the FLSA requirements for payment of tips.

Additionally, Barreto repeatedly denied that Morataya's duties ever changed significantly from when she was hired as a busser, that she never assumed the role of "server" or "waiter," and claimed to not understand what those words meant. The Court had the opportunity to observe Barreto's testimony and while there were times when it became apparent that there were limitations to his English, it is simply not credible that he did not know what these words mean. Indeed, in his deposition testimony, he repeatedly acknowledged that Morataya was a waitress.

It is also significant that it is the Defendants' failure to keep and maintain records for all relevant years that requires the Court to rely on oral testimony to establish the hours worked. Although a limited number of payroll documents and time sheets were maintained and admitted into evidence, most were destroyed. An employer "has a duty to keep proper and accurate records of the employee's wages, hours, and other conditions and practices of employment." *McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260, 276 (D. Md. 2014) (citing *Donovan v. Kentwood Dev. Co., Inc.*, 549 F. Supp. 480, 485 (D. Md. 1982)). Thus, while Plaintiff "carries the burden of proof in an FLSA claim for overtime wages," *Randolph v. Powercomm Constr.*,

*Inc.*, 309 F.R.D. 349, 362 (D. Md. 2015) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 68687, 66 S. Ct 1187, 90 L. Ed. 1515 (1946)), the "burden is light, especially when the employer's records are inaccurate or inadequate," *id*.

Three witnesses, Morataya, Barreto, and Fernandes, testified to their recollection of Morataya's schedule. They differed by varying degrees. These differences are not unimportant as, for example, the difference between whether she was scheduled to begin at 7am or 8am on a given day, multiplied over the course of multiple years, significantly changes the damage calculation. As indicated, the Court does not credit Barreto's version of events and thus will not engage in a lengthy recitation of his recollection of her schedule, which was sometimes internally inconsistent. Fernandes's recollection differed slightly from Morataya but the Court finds Morataya credible and finds her to be a more reliable source than Fernandes regarding her own schedule.

For these reasons, the Court credits Morataya's testimony regarding her hours worked and payments received.[3] But even this finding leaves some uncertainty as there were, of course, periods of fluctuation. Indeed, as counsel for defense pointed out in closings, the relatively few timesheets available to the Court show fluctuations in hours and Morataya testified to occasional days off, albeit few, as well as days where she worked additional hours to provide coverage for Fernandes or Barreto. With these potential fluctuations in mind, the Court finds that Morataya worked, on average, 62 hours per week from the date she was hired on June 27, 2010 until she became a waitress on March 12, 2011; 63 hours per week between March 12, 2011 and May 2, 2011 when she began school; and 57 hours per week between May 2, 2011 and when her employment ended on July 13, 2013. The Court further finds that she only received payment for

---

[3] Portions of Gonsalves's summary of payments made to Morataya are not disputed by Plaintiff and are also used by the Court in making its findings.

40 hours per week from June 27, 2010 until March 12, 2011. Finally, the Court finds that from March 12, 2011 until June 9, 2013, she was paid $4 per hour and from June 9, 2013 until July 12, 2013, she was paid $4.15 per hour.

### III.   CONCLUSIONS OF LAW

#### A. Liability

The FLSA requires employers to "pay to each of [their] employees, who, in any workweek, is engaged in commerce or in the production of goods for commerce, wages at . . . $7.25 an hour" and mandates that employers pay their employees at a rate of one and one-half times their regular rate for hours worked in excess of 40 hours in a given week. 29 U.S.C. §§ 206(a)(1) and 207(a)(1); *Butler v. PP&G, Inc.*, No. WMN-13-430, 2013 WL 5964476, at *6 (D. Md. Nov. 7, 2013) ("Pursuant to the FLSA, an employer must pay an employee an hourly wage no less than federal minimum wage.").

In addition to her FLSA claim, Plaintiff has also brought claims under the MWHL and the MWPCL. Similar to the FLSA, the MWHL "requires that employers pay the applicable minimum wage to their employees and, in [§§ 3-415 and 3-420 of the Labor and Employment Article], that they pay an overtime wage of at least 1.5 times the usual hourly wage" for each hour worked in excess of forty hours per week. *McFeeley*, 47 F. Supp. 3d at 275 (quoting *Friolo v. Frankel*, 373 Md. 501, 513, 819 A.2d 354 (2003)) (internal quotation marks omitted). While the MWHL provides a minimum wage standard, the MWPCL requires an employer to regularly pay its employees while employed and at the termination of employment. LE § 3-402, 3-502, 3-5-5. "Read together, these statutes allow employees to recover unlawfully withheld wages from their employer, and provide an employee with two avenues to do so." *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 653, 97 A.3d 621, 625 (2014) (citing *Battaglia v. Clinical*

*Perfusionists, Inc.*, 338 Md. 352, 364, 658 A.2d 680, 686 (1985)). Additionally, the Maryland Court of Appeals has determined that an employee is entitled to sue under both statutes to recover withheld overtime wages, *id.* at 654 ("[B]oth the [M]WHL and the [M]WPCL are vehicles for recovering overtime wages."), however, at all times relevant to this litigation, the MWHL exempted restaurants from its overtime provisions, *Gionfriddo v. Zink*, 769 F. Supp. 2d 880, 895 (D. Md. 2011).[4]

Based on the above findings of fact, the Court concludes as a matter of law that Defendants violated the MHWL by its failure to pay minimum (or any) wages to Morataya beyond the 40 hours per week paid to her from June 27, 2010 until March 12, 2011 and by paying $4 per hour and then $4.15 per hour from March 13, 2011 through July 13, 2013. The Court additionally concludes as a matter of law that the Defendants violated the FLSA by not paying minimum and overtime wages from January 1, 2012 through July 13, 2013.[5] Still left for the Court's determination is whether the Plaintiff is entitled to liquidated damages under the FLSA and enhanced damages under state law.

### B. Damages

#### 1. Liquidated Damages Under the FLSA

Pursuant to the FLSA, an employer who violates minimum wage or overtime requirements "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "Liquidated damages are

---

[4] The restaurant exemption was eliminated in the Maryland Minimum Wage Act of 2014. *See* 2014 Maryland Laws Ch. 262 (H.B. 295); L.E. § 3-415.

[5] Because Plaintiff did not demonstrate that the Defendant earned in excess of $500,000.00 in gross annual receipts in 2011, as required to state a FLSA claim, she is not entitled to recover under the FLSA for that year. *See* 29 U.S.C. § 203(s)(1)(A).

not seen as punitive, but as compensation for damages otherwise 'too obscure and difficult of proof.'" *Rogers v. Sav. First Mortg., LLC*, 362 F. Supp. 2d 624, 637 (D. Md. 2005) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 70708, 65 S. Ct. 895, 89 L. Ed. 1296 (1945). Courts have routinely held that there is a presumption in favor of an award of liquidated damages when it is determined that the employer has violated the FLSA. *Id.; see also Lanza v. Sugarland Run Homeowners Assoc., Inc.*, 97 F. Supp. 2d. 737, 739 n.9 (E.D. Va. 2000).

> Nonetheless, there are circumstances where liquidated damages are not appropriate:

> If the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [29 U.S.C. § 216(b)].

*Rogers*, 362 F. Supp. 2d at 63738. An employer found liable under the FLSA has the "plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Wright v. Carrigg*, 275 F.2d 448, 449 (4th Cir. 1960). This burden "is a difficult one to meet . . . and double damages are the norm, single damages the exception." *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (citation omitted).

Defendants argue that Barreto's payment of the weekly cash payments to Morataya demonstrates that he was making an effort, even if improper, at paying her minimum wage. They additionally argue that because Barreto told Gonsalves, a certified CPA, about his payment methods and was not corrected, that good faith applies. These arguments fail. Courts have been consistent in finding that ignorance of the requirements of the FLSA does not constitute good faith. *Reeves v. Int'l Tel. & Tel., Co*, 616 F.2d 1342, 1353 (5th Cir. 1980), *cert. denied*, 449 U.S.

1077, 101 S. Ct. 857, 66 L. Ed. 2d 800 (1981); *Williams v. Md. Office Relocators, LLC*, 485 F. Supp. 2d 616, 620 (D. Md. 2007); *Rogers v. Sav. First Mortg., LLC*, 362 F. Supp. 2d 624, 638 (D. Md. 2005). Indeed, "where a question is complex or uncertain, an employer at the least must show that it made a diligent investigation into the issues and concluded not to pay overtime based upon the results of its investigation." *Rogers*, 362 F. Supp. 2d at 638 (superseded by statute on other grounds). There is no evidence that Defendants here made any investigation into whether their method of payment was appropriate. Thus, they have not shown good faith and liquidated damages will be awarded.

2. Enhanced Damages Under State Law

Although state wage statutes allow for enhanced damages, "a trier of fact 'may not award enhanced damages unless it finds that the employee's wages were not withheld as a result of a bona fide dispute.'" *Programmers' Consortium, Inc. v. Clark*, 409 Md. 548, 563, 976 A.2d 290, 299 (2009). A bona fide dispute is "a legitimate dispute over the validity of the claim or the amount that is owing" such that the employer had a good faith basis for withholding payment. *Admiral Mortg., Inc. v. Cooper*, 357 Md. 533, 543; 745 A.2d 1026, 1031 (2000). Although the statute is silent on which party bears the burden of proof on this issue, the Maryland Court of Appeals has placed the burden on the employer to prove the bona fide dispute. *Peters*, 439 Md. at 658 ("[I]t is not difficult to conclude that the employer, as the party withholding the wages, is uniquely qualified to offer evidence about its reason for doing so.").

Nonetheless, "an employee is not presumptively entitled to enhanced damages, even if the court finds that wages were withheld without a bona fide dispute." *Id.* at 661. Rather, trial courts are simply "encouraged to consider the remedial purpose of the [M]WPCL when deciding whether to award enhanced damages to employees." *Id.* The statute does not set a specified

amount of enhanced damages but does state that "plaintiff may be awarded an amount 'not exceeding three times the wage.'" *Marroquin v. Canales,* 505 F. Supp. 2d 283, 296 (D. Md. 2007) (citing *Admiral Mortgage, Inc.,* 357 Md. at 547; *Peters,* 439 Md. at 667 ("The total amount of damages an employee may recover under the [M]WPCL is three times the unpaid wage.")).

The Defendants have not met their burden of demonstrating a bona fide dispute. As stated above, Defendants made no effort to determine if their method of payment was consistent with controlling law. Thus, for the same reasons the Court concluded that good faith was not demonstrated for purposes of determining liquidated damages, the Court concludes that there was not a bona fide dispute. Although this does not compel an award of enhanced damages, the Court concludes that they are warranted here. That said, the Court is mindful of the fact that, as even Plaintiff's counsel conceded, in paying the weekly cash payments, Defendants did pay Plaintiff an amount that met or exceeded what her minimum wage would have been. Although the weekly cash payments cannot be considered for the purposes of applying an off-set to the owed minimum or overtime wages, *see* ECF Nos. 44 and 56, the Court does find that, in light of those payments received by Morataya, merely doubling, rather than tripling, the compensatory damage total is sufficient to serve the remedial purpose of the statute.

3. Damage Calculations

For the thirty-seven week period between June 27, 2010 to March 12, 2011, before Morataya became a waitress, the Court finds that she worked 2,294 hours (62 hours per week) but was only paid for 1,480 hours (40 hours per week). Thus, she is owed minimum wage for 814 hours. Multiplying that figure by the $7.25 she should have received for each hour, results in

$5,901.50 that Morataya is owed in compensatory damages under the MHWL and MWCPL for that time period.

For the seven week period from March 12, 2011 through May 2, 2011, when she adjusted her hours to accommodate school, Morataya worked 441 hours. For the thirty-five week period from May 2, 2011 until December 31, 2011, she worked 1,995 hours. Thus, from May 12, 2011 through December 31, 2011, she worked 2,436 hours. Morataya concedes she was paid $4 for every hour worked during this period which would mean she was paid $9,744. Had she been paid $7.25 an hour, she would have been paid $17,661. Thus she is owed the difference, $7,917, under the MHWL and MWCPL for this time period.

For the seventy-four week period from January 1, 2012 to June 9, 2013, Morataya worked 4,218 hours. At a rate of $4 per hour, she was paid $16,872. For the five week period from June 9, 2013 until July 13, 2013, when she was paid $4.15 per hour, she worked 285 hours and was paid $1,182.75. Thus from January 1, 2012 to July 13, 2013, she received a total of $18,054.75. Had she been paid $7.25 per hour, she would have been paid $32,646.75. Thus, she is owed the difference, $14,592, for this time period under the MHWL, MWCPL, and FLSA.

In total, Morataya is owed $28,410.50 in past due minimum wage payments. She will be awarded an equal amount in enhanced damages under the MHWL and MWCPL and liquidated damages under the FLSA for a total of $56,821.[6]

For overtime under the FLSA, the Court finds that Morataya worked 4,503 hours from January 1, 2012 through July 13, 2013 and that anything over 3,160 constitutes overtime. The Court has already awarded Morataya $9,736.75 for minimum wage payments for those 1,343

---

[6] Because Plaintiff is not permitted to recover multiple times for the same injury, Plaintiff will receive one payment under all applicable statutes and not a separate payment for each statute violated. *See Clancy v. Skyline Grill, LLC.*, No. ELH-12-1598, 2012 WL 5409733, at *5 (D. Md. Nov. 5, 2012), *report and recommendation adopted*, No. ELH-12-1598, 2013 WL 625344 (D. Md. Feb. 19, 2013) ("[A] party may not recover twice for one injury, even if the party asserts multiple, consistent theories of recovery.").

hours. Paid at $10.88 for those hours, her payment would be $14,611.84. She is owed the difference, $4,875.09 in overtime compensation. Including liquidated damages, the payment under FLSA is $9,750.18.

Total judgment for the Plaintiff is $66,571.18.

IV. **CONCLUSION**

For the foregoing reasons, Judgement in favor of the Plaintiff is entered in the amount of $66,571.18.

A separate Order shall issue.

Dated: May 20, 2016

GEORGE J. HAZEL
United States District Judge